**Dr. Jack L. MARVIN, Patricia Marvin, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 82–2476.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1983.

Decided April 26, 1984.

James R. Wyrsch, Charles E. Atwell, Stephen G. Mirakian, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., for appellants.

Robert G. Ulrich, U.S. Atty., Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and DUMBAULD,* Senior District Judge.

FAGG, Circuit Judge.

The Marvins seek return of records concerning Dr. Marvin's chiropractic practice which were seized by Internal Revenue Service agents in the course of a criminal tax investigation. The district court denied their motion brought pursuant to Federal Rule of Criminal Procedure 41(e). We have been informed that all of the original records have been returned to the Marvins, but that the IRS has retained copies of documents reflecting financial information. Hence, the question before us is whether the IRS may retain these copies. We affirm in part and reverse in part.

Kenneth Wissel, an IRS agent, and Clara June Astorino, a clinic employee, swore in person to affidavits before a federal magistrate. The Astorino affidavit provides information about practices used at the clinic for recording and reporting income and includes estimates of income earned at the clinic but concealed. Her affidavit also describes the financial records of the clinic and indicates where they may be found.

Wissel's affidavit reiterates information found in the Astorino affidavit and includes statements bolstering Astorino's reliability. In addition, based on information received from Astorino and on gross receipts reported to the IRS by the Marvins, Wissel's affidavit contains estimates of unreported income of substantial amounts.

Based on these affidavits the magistrate issued two search warrants. The warrants provide for seizure of records reflecting the Marvins' taxable income from operation of the clinic for specified years. One warrant authorizes a search for these items at the clinic operated by the Marvins. Another warrant authorizes a search of a residence owned by the Marvins and rented to Bill Kelly, but limits the search to the area under the stairway leading to the second floor. The warrants were executed and records were seized at both locations.

The Marvins contend that all records seized must be returned because the searches and seizures by which the IRS gained possession of them were unlawful. Federal Rule of Criminal Procedure 41(e) provides in part:

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. * * * If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial."

The Marvins have advanced several grounds for finding the searches and seizures unlawful and hence requiring the return of records seized. We now turn to an examination of those grounds.

The first issue we consider is whether the affidavits which supported the issuance of the warrants provided probable cause. The Marvins contend in particular that Astorino's affidavit is deficient be-

---

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

cause it contains no showing of her credibility and veracity and that as a consequence the reliability of the information she provided was not shown. The sufficiency of the Astorino affidavit is important because Wissel's affidavit is largely based on the information included in Astorino's affidavit. We believe, however, that the affidavits are adequate to support a determination of probable cause. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), *quoting Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *United States v. Doty*, 714 F.2d 761, 763 (8th Cir.1983); *United States v. Ross*, 713 F.2d 389, 393 (8th Cir.1983). In her affidavit Astorino described her duties and responsibilities at the clinic and related in detail the procedures for keeping records, the method by which income was concealed, and the places where documents reflecting income were stored. Wissel verified some of this information in his own affidavit. In addition, Astorino executed the affidavit in person before the magistrate. *Cf. United States v. Hunley*, 567 F.2d 822, 827 (8th Cir.1977) (informant personally appeared, thus no requirement of independent corroboration of trustworthiness). The affidavits withstand scrutiny under *Gates*.

■ The Marvins also contend that the affidavits presented to the magistrate contain material misrepresentations and that as a consequence warrants supported by the affidavits are invalid. The Marvins have focused their argument on alleged false statements in Astorino's affidavit, and rely on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in which the Court held that if it is shown by a preponderance of the evidence that a warrant affidavit includes a false statement made knowingly and intentionally or with reckless disregard for the truth and if, with the affidavit's false material excluded, the affidavit is insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 155–56; *United States v. Wallraff*, 705 F.2d 980, 993 n. 5 (8th Cir.1983), *quoting United States v. House*, 604 F.2d 1135, 1139 (8th Cir.1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 931, 63 L.Ed.2d 764 (1980). The district court determined that the Marvins did not meet their burden of establishing by a preponderance of the evidence that the contested portions of Astorino's affidavit contain false statements made by her knowingly and intentionally or with reckless disregard for the truth. This finding is not clearly erroneous. *See United States v. Wallraff, supra*, 705 F.2d at 993 n. 5. The Marvins also argue that some information was omitted from the affidavits and that this omission constitutes a material misrepresentation bearing on the existence of probable cause. We agree with the district court, however, that the omissions are not material to a determination of probable cause. The omitted information does not contradict statements in Astorino's affidavit, but pertains only to her credibility and reliability. Probable cause would not have been lacking had the omitted information been presented to the magistrate.

■ We next consider whether the seized records must be returned because tax return information was disclosed in violation of 26 U.S.C. § 6103. The first improper disclosure allegedly occurred when Wissel interviewed Astorino while other law enforcement officers were present. The second improper disclosure allegedly occurred when the affidavits were filed without placing them under seal, thus permitting public access to information in the affidavits. The district court held that suppression or return of evidence is not available to the Marvins as a remedy for a viola-

tion of section 6103 and held in addition that no violation of section 6103 had occurred in any event.

Assuming for the sake of discussion only that a violation of section 6103 occurred, we hold that in this case return, and consequently suppression, of copies of the seized records is not an available remedy. For violation of the disclosure provisions of section 6103 Congress has specifically provided criminal penalties, 26 U.S.C. § 7213, and civil penalties, 26 U.S.C. § 7217 (repealed Sept. 3, 1982); 26 U.S.C. § 7431 (effective Sept. 3, 1982). The Second Circuit has noted that these penalty provisions "afford some evidence that Congress did not desire the courts to apply the exclusionary rule mechanically to every violation of § 6103," *United States v. Mangan,* 575 F.2d 32, 41 (2d Cir.), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978), and that "courts should be loath to imply an exclusionary sanction" for such violations. *United States v. Barnes,* 604 F.2d 121, 146 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). We find this reasoning especially persuasive in the present case. The Marvins do not seek return or suppression of information disclosed in violation of section 6103. Instead, they contend that improper disclosure of information during a tax investigation renders unlawful the seizure of records pursuant to a warrant during the investigation. In both *Mangan* and *Barnes,* however, an exclusionary remedy was denied even though the defendants sought suppression of the very information allegedly disclosed in violation of section 6103. The Marvins thus present a less compelling argument than did the defendants in *Mangan* and *Barnes.* They are not entitled to return of the records by virtue of the alleged violations of section 6103.

■ Several issues have been raised pertaining to the search warrant for the clinic and its execution. One of these issues is whether the warrant for the clinic describes with adequate particularity the places to be searched. The Marvins contend that the warrant is defective because

it does not specify the places to be searched within the clinic building. Specifically, they argue that the warrant improperly permitted the agents to search private apartments within the clinic building, and that the apartments were in fact searched. None of the records sought by the Marvins in this proceeding were seized from the apartments, though. The validity of the warrant authorizing a search of the whole clinic depends on "whether the police knew, or with reasonable investigation could have found out, that the building described in the warrant contained multiple residences, a fact which would place the police 'under a responsibility to pinpoint the offending unit or units.' " *United States v. Gill,* 623 F.2d 540, 544 (8th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980), *quoting United States v. Dorsey,* 192 U.S. App.D.C. 313, 591 F.2d 922, 929 (1978). The district court, however, found nothing in the record to indicate that the agents had reason to believe or reasonably should have believed that the clinic contained apartments or private rooms in which someone other than the Marvins resided. This factual finding is not clearly erroneous. Consequently, the warrant does not lack the requisite particularity in describing the places to be searched.

■ We next turn to the Marvins' argument that the search warrant for the clinic does not describe with particularity the items to be seized. The warrant contains the following description of the items to be seized:

Patient account cards, also known as ledgers, and patient medical folders for the years 1–1–78 through 12–31–81, inclusive, and other books and records that reflect the income and expenses of Jack L. Marvin and Patricia A. Marvin for the years 1–1–78 through 12–31–81, inclusive, from the operation of the Midtown Clinic.

"In applying the particularity requirement, we recognize that 'the degree of specificity required is flexible and may vary depending on the circumstances and the type of items involved.' " *United States v. Apker,*

705 F.2d 293, 299 (8th Cir.1983), *quoting United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir.1978). *See also United States v. Coppage*, 635 F.2d 683, 686–87 (8th Cir.1980). The warrant describes with sufficient particularity the items to be seized. Nothing was left to the discretion of the agents executing the warrant. *See Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *United States v. Apker, supra*, 705 F.2d at 299. Nor does the warrant authorize the officers to seize more than was reasonable in the circumstances. Astorino had described in her affidavit the way in which financial information was included in patient medical files. Some files contained ledger cards, some had ledger cards stapled to the folder, and others had financial information noted on the outside of the folder itself. The description in the warrant is limited to items likely to provide information concerning the Marvins' taxable income for the years involved. *Cf. United States v. Brien*, 617 F.2d 299, 309 (1st Cir.) (if probable cause to find pervasive scheme to defraud then all business records of enterprise may be seized), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980).

Having determined that the search warrant for the clinic was valid, we consider the Marvins' contention that the IRS should not be allowed to retain copies of any records seized at the clinic because the entire search was unlawful by virtue of the seizure of items not described in the warrant. In executing the warrant the agents seized a large number of file folders for later examination and copying of financial information. The agents removed entire patient files rather than segregate financial information at the clinic. Some files were seized that did not contain any financial information. Other files were taken that contained records dated before or after the period specified in the warrant, records belonging to other doctors, and personal correspondence and other items belonging to the Marvins.

The district court held that the agents had not exceeded the scope of the warrant.

The court determined that it was reasonable for the agents to seize entire patient files rather than sort out financial information while at the clinic. Nevertheless, the district court ordered the IRS to return to the Marvins any documents seized that do not reflect their income and expenses for the years 1978 through 1981. We interpret this order as allowing the IRS to retain only those records described in the warrant which evidence taxable income for the years specified in the warrant. As the district court noted, some records dated outside the years specified in the warrant reflect taxable income for those years. The government does not challenge the district court's order and hence the only question we need decide is whether the IRS must return copies of records it was authorized by the warrant to seize.

■ Even if there was an unlawful seizure beyond the limitations of the warrant, a question we do not reach, the Marvins have not made a sufficient showing to require that all documents seized during the search of the clinic be returned. Unlawful seizure of items outside a warrant does not alone render the whole search invalid and require suppression and return of all documents seized, including those lawfully taken pursuant to the warrant. *See United States v. Tamura*, 694 F.2d 591, 597 (9th Cir.1982); *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Heldt*, 668 F.2d 1238, 1259–60 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *In re Search Warrant Dated July 4, 1977, for Premises at 2125 S Street, Northwest, Washington, D.C.*, 667 F.2d 117, 130–33 (D.C.Cir.1981), *cert. denied*, 102 S.Ct. 1971, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *United States v. Forsythe*, 560 F.2d 1127, 1134 (3d Cir.1977).

■ A flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized

during the search. *See United States v. Heldt, supra,* 668 F.2d at 1259; *see also United States v. Tamura, supra,* 694 F.2d at 597; *United States v. Wuagneux, supra,* 683 F.2d at 1354. In the present case we do not find a flagrant disregard of the terms of the search warrant. The record shows that the agents attempted to stay within the boundaries of the warrant and that the extensive seizure of documents was prompted largely by practical considerations and time constraints. *Cf. United States v. Tamura, supra,* 694 F.2d at 597 (valid warrant not transformed into general one where wholesale seizures motivated by considerations of practicality rather than by desire to engage in indiscriminate "fishing").

We now turn to the Marvins' argument that all copies of records seized at the residential rental property must be returned because their seizure was unlawful. In executing the warrant at the house, IRS agents, accompanied by Kansas City police officers, tried unsuccessfully to get the attention of the occupant, and then forced open a door. The area under the stairway specified in the warrant was very near the door that the agents and officers had entered. Nevertheless, they conducted a sweep search of the house during which an agent found the renter, Kelly, asleep in a second floor bedroom. Before reaching the bedroom, though, the agent was required to step over medical files lying on the floor. The files were distributed about an area on the second floor, with some of the files in a closet, the door of which was blocked open by a stack of files. When Kelly was told of the purpose of the search, he pointed to these files and said they were the ones for which the agents were looking. After Kelly signed a consent to search of the house and seizure of the files, the files were removed to IRS headquarters. The search warrant for the house does not authorize a search of the second floor, however, and none of the seized records were found in the area specified in the warrant. As a consequence, the government does not depend on the warrant but relies solely on Kelly's consent to validate the seizure of the records. Accordingly, we need not, and do not, decide whether another theory, i.e., plain view, may render the seizure lawful and hence we do not determine the propriety of the sweep search through which the records were discovered.

 A consent search is valid if it is shown "that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (footnote omitted); *see United States v. Selberg,* 630 F.2d 1292, 1294–95 (8th Cir.1980); *United States v. Patterson,* 554 F.2d 852, 854 (8th Cir.1977); *United States v. Kelly,* 551 F.2d 760, 764 (8th Cir.) *cert. denied,* 433 U.S. 912, 97 S.Ct. 2981, 53 L.Ed.2d 1097 (1977). Common authority depends on whether there is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock, supra,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993; *see Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969) (defendant assumed risk that person to whom bag lent would allow someone else to look inside); *see also United States v. Selberg, supra,* 630 F.2d at 1294–95; *United States v. Kelly, supra,* 551 F.2d at 764.

 The district court found that Kelly had voluntarily consented to the search of the house and that he had common authority over the premises in which the files were located. We do not disturb these findings. In our view, however, Kelly did not have common authority over the records themselves, or a sufficient relationship to them, that would allow him to give the agents permission to search through the files in order to find records relevant to their investigation. The Marvins retained full au-

thority over the records and cannot be said to have relinquished any authority or control over them to Kelly, nor did the Marvins assume the risk that Kelly might allow a search of the records. Kelly simply had no right to permit the agents to search the files or to remove them from the house. As a result, the seizure of records from the residence was invalid and all copies of these records retained by the IRS must be returned.

Finally, we reject the Marvins' omnibus argument that various instances of misconduct by IRS agents during the investigation, when viewed as a whole, rendered the search of the clinic unlawful. Accordingly, we affirm that part of the district court's order permitting the IRS to retain copies of records seized at the clinic which reflect taxable income for the years 1978–1981. We modify the district court's order to require that all other documents and copies be returned to the Marvins, and remand to allow the district court to oversee compliance with this opinion.