**UNITED STATES of America,**
**Petitioner,**

v.

**PREMISES KNOWN AS 1007 MORNINGSIDE AVENUE, SIOUX CITY, IOWA, Respondent.**

**No. 85–4008M.**

United States District Court,
N.D. Iowa, W.D.

Dec. 26, 1985.

William A. Cohan, Denver, Colo., for petitioner.

Asher Schroeder, Asst. U.S. Atty., Sioux City, Iowa, for respondent.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on respondent's resisted Motion for the Return of Seized Property. A hearing was held at which all parties were represented by counsel. After fully considering the evidence at the hearing and the arguments of counsel in the briefs and at the hearing, the Court sustains Respondent's motion in part and denies the motion in part.[1]

Two warrants are at issue here, the first warrant was issued April 4, 1985 by Judge McManus directing a search of:

Premises known as 1007 Morningside Avenue, Sioux City, Iowa 51106, being further described as a single story chiropractic office building, *excluding the attached two-story frame residential dwelling.*[2]

The respondent contends this first warrant is invalid for (1) defects on the face of the warrant, (2) lack of probable cause for the search, (3) overbreadth, and (4) lack of particularity.

The second warrant was issued April 5, 1985 by Magistrate Deck while the first warrant was being executed. It directed a search of:

Premises known as 1007 Morningside Avenue, Sioux City, Iowa 51106, being further described as *the first floor of a two story frame residential dwelling,* and that attached thereto is a single story chiropractic office building. (emphasis added)

The respondent contends that it is invalid on the grounds of (1) pretext, (2) defects on the face of the warrant, (3) lack of probable cause, (4) overbreadth, and (5) lack of particularity.

On April 4, 1985, IRS Special Agent Nathan J. Woodard applied for the first search warrant on the basis of a nine page affidavit alleging probable cause to believe that Respondent Gary Rosenberger had committed violations of the United States Code, 18 U.S.C. Section 371 (conspiracy), 26 U.S.C. Section 7201 and 7203 (tax evasion and willful failure to file a tax return), and 31 U.S.C. Section 5322 (violation of the currency transactions reporting law), all for the years 1978 through present.

The search of the Rosenberger premises was part of a simultaneous search of persons or entities suspected of similar violations at six locations. Counsel for this respondent represents other respondents in the related actions and states that the other premises searched were owned and/or controlled by (1) Norbert Stelten (Minnesota), (2) Walter J. Clifford (Minnesota),

---

1. A Motion to Proceed In Forma Pauperis was prepared and filed by the Respondent without the aid of his retained attorney. At the hearing Mr. Cohan stated that he had no position with respect to the Motion to Proceed In Forma Pauperis. Dr. Rosenberger stated that he filed it in the event the expense of litigation would be such that he could not proceed on appeal due to expenses and costs of an appeal bond. The Court finds that this motion is unrelated to any matter of immediate importance and is therefore premature. This motion is denied without prejudice. It can be reurged at a later time and the Court may set an evidentiary hearing if the government contests the motion.

2. Respondent Rosenberger is a chiropractor.

Robert and Audrey Hawley (South Dakota), (5) the National Commodity and Barter Association/National Commodity Exchange (N.C.B.A./N.C.E.), Joseph Gorman, and Mel & Cathy Houser (Colorado), and (6) the American Freeman Association/National Currency Exchange (A.F.A./N.Cu.E.) (Oregon). The stated purpose *common* to the searches and seizures was to search for and seize evidence of a conspiracy to violate the Currency Transactions Reporting laws.

The first warrant on the Rosenberger premises was executed beginning at about 1:00 p.m. April 5, 1985 during Rosenberger's absence for lunch and the search continued until approximately 6:30 p.m. Rosenberger returned to the premises within a few minutes after the search started and remained until the search concluded.

Attached to the Rosenberger chiropractic office is a dwelling in which a tenant of Rosenberger lives. The attached dwelling was specifically excluded from the first warrant. However, shortly after the arrival of the search party, the agents entered the dwelling and visually searched the first floor. This entry was made as a security sweep.

Later, officers in the search party re-entered the attached dwelling with their guns drawn in response to a thumping noise they heard from the dwelling. The officers noticed some financial records during this second entry. The officers sought and obtained a second warrant for the search of the dwelling based on this information.

The officers' search yielded approximately 31 boxes of paper and books, i.e. the government estimated that the volume of paper seized would stack to a height of over 25 feet. The Court required the government to file a report after the hearing categorizing the seized property. The government's report set forth three categories of items seized, together with an estimate of the volume seized under each category:

Financial . . . . . . . . . . . . . . . . . . . . . . . . . 27%
Intent . . . . . . . . . . . . . . . . . . . . . . . . . 36% [3]
Items to Return . . . . . . . . . . . . . . . . . . 37% [4]

The Court ordered the prompt return of the items the government agreed should be returned on August 12, 1985, and this has been accomplished. This Order deals only with the first two categories of items still being held by the Internal Revenue Service.

## I. The First Warrant

*Defective on its Face?*

■ The respondent continues to press for the return of *all* seized material. The respondent contends that the first warrant is defective on its face. The respondent argues that the warrant does not describe the premises to be searched and items to be seized and that the sole limitation on the warrant is that the items seized must relate to a time from 1978 through present. He further argues that the warrant does not contain any language informing the executing officers or himself the nature of the criminal activity under investigation; nor that any language on the warrant incorporates the affidavit of Agent Woodard into the warrant for purpose of informing the respondent of the cause of the intrusion or limiting the discretion of the executing officers. The description in a warrant passes muster if it is sufficient to identify the place to be searched and items to be seized. *Steele v. United States*, 267 U.S. 498, 503–04, 45 S.Ct. 414, 416–17, 69 L.Ed. 757 (1925); *United States v. Williams*, 687 F.2d 290, 292–93 (9th Cir.1982). The particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) *quoting Stanford v. Texas*, 379 U.S. 476, at 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965).

**3.** Papers which the Government contend go to the element of intent.

**4.** Items the Government admits should be returned.

"[T]he degree of specificity required is flexible and may vary depending on the circumstances and the type of items involved." *United States v. Apker*, 705 F.2d 293, 299 (8th Cir.1983), *quoting United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir.1978). The degree of specificity may also depend on the circumstances and nature of the activity being investigated. *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.1982); *cf. United States v. Dennis*, 625 F.2d 782, 792 (8th Cir.1980).

■ The Court finds that there were no substantial defects on the face of the warrant. The warrant sufficiently described the premises to be searched. This description is set forth below:

1) Books, records, receipts, bank statements, and records, money drafts, letters of credit, money orders, and cashier check's receipts, passbooks, bank checks, and other items of or relating to Gary Rosenberger, Life Science Church of Morningside, and/or P.R. Refining, and/or T.S.L.S.C.A. evidencing the obtaining, secreting transferring concealing and/or expenditure of money;

2) Books, records, receipts, notes, ledgers, and other documents relating to financial transactions of NATIONAL CURRENCY EXCHANGE (N.C.E.) and/or MID–STATES SECURITY EXCHANGE (M.S.E.) and/or HARDWAY COMPANY.

3) Currency, precious metals, jewelry, antiques and/or other items evidencing substantial cash or currency transactions of or by Gary Rosenberger, Life Science Church of Morningside, P.R. Refining, NATIONAL CURRENCY EXCHANGE (N.C.E.) and/or NATIONAL COMMODITY BARTER ASSOCIATION (N.C.B.A.) and/or MID–STATES SECURITY EXCHANGE (M.S.E.) and/or HARDWAY COMPANY and/or T.S.L.C.A.[5]

NOTE: Documentary Evidence is limited to the years 1978 through the present.

Under the circumstances here it would be impossible to describe the exact identity of each document and piece of evidence which could be seized. Describing the generic classes of documents set reasonable parameters for the search here. *Dennis, supra*, 625 F.2d at 792. The description in the warrant here is limited to items likely to provide information concerning Rosenberger's taxable income for the years involved. *Cf. Marvin v. United States*, 732 F.2d 669, 674 (8th Cir.1984).[6] While the Eighth Circuit has criticized a warrant that did not set forth the citation to the statute the respondent was suspected of violating, *In re Grand Jury Proceedings*, 716 F.2d 493, 499 (8th Cir.1983),[7] the Circuit did not state that it was an absolute requirement. This Court is unaware of any constitutional or other requirement that the statute be cited or referred to in the warrant itself so long as the items to be seized are otherwise defined with sufficient particularity. In the first paragraph of the description of items to be seized, the description of "other items" is limited to evidence of "obtaining, secreting, transferring, concealing and/or expenditure of money." As thus limited the Court believes the description of "other items" was sufficiently specific. Further, the officers here acted in objective good

---

5. [T.S.L.C.A. refers to Tri-State Life Science Church Association]

6. The respondent has a strong argument that he is not subject to the currency transactions reporting laws. The Court believes the evidence sought concerning the suspected violation in the affidavit of currency transactions reporting laws is the same as that seized for suspected violation of income tax laws. Therefore it is unnecessary to further address respondent's argument concerning the currency transactions reporting laws.

7. In *In re Grand Jury Proceedings*, the affidavit itself "set forth no basis whatsoever for suspecting that the voiding of bonds was illegal or improper." *Id.* at 500. The Court believes the affidavit here did set forth probable cause to suspect a violation of 26 U.S.C. Sections 7201 and 7203. *In re Grand Jury Proceedings* is therefore distinguishable. Further that case did not establish a wrought iron requirement that the statute suspected of being violated be referred to in the warrant itself.

faith reliance upon a warrant issued by a detached and neutral judicial officer in seizing evidence related to taxable income. *See United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 104 S.Ct. 3424, 3428–29, 82 L.Ed.2d 737 (1984).

The Court believes the generic descriptions of the other documents (*i.e.* Books, records, receipts, etc.) was sufficient to describe the classifications of items to be seized, greater specificity under the circumstances was virtually impossible. *See Sovereign News Co. v. United States,* 690 F.2d 569, 576–77 (6th Cir.1982) (Magistrate entitled to describe business records generically, since greater specificity regarding these items is virtually impossible). The Court concludes that the "first warrant" was not defective on its face.[8]

### Probable Cause

The respondent next contends that the affidavit fails to establish probable cause for the issuance of a search warrant, under the "totality of circumstances" test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Respondent contends that no factual basis is established for several of Woodard's assertions.

A grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. "Courts should not invalidate warrants by interpreting affidavits in a hypertechnical rather than a common-sense manner." *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *See Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2340, 76 L.Ed.2d 527 (1983). The Court's opinion is that a judicial officer can properly rely on the statements of an IRS special agent indicating that (1) a person has not filed tax returns since 1976, (2) that he had gross receipts of "no less than $85,880.37

in 1979, $162,210.76 in 1980, and $111,-395.75 in 1981" (Woodard Affidavit, p. 3) where the affidavit recites that the gross receipts were determined from bank records and other third parties, and (3) can properly rely on the same affiant's statements that net profits were calculated based on a table of averages for medical and health services professions which averages indicate the taxpayer owed $5,521.00, $17,726.81, and $8,920.00 for the years 1979, 1980 and 1981 respectively. The above information alone provides sufficient support for a finding of probable cause to conduct a document search for information concerning the taxpayer's income. Further, there is sufficient support in the affidavit based on Agent Woodard's investigation and experience to state in general terms the way the N.C.E., N.C.B.A., M.S.E., T.S.L.S.C.A., and P.R. Refining are used by tax evaders to conceal income from the IRS.[9] Further, the affidavit revealed a basis to suspect Rosenberger's involvement with the N.C.E., N.C.B.A., and M.S.E. The affidavit states that Dr. Rosenberger is a member of the Life Science Church. While Agent Woodard does not explain where he learned of Rosenberger's involvement in the Life Science Church, it is a matter of record based on previous lawsuits involving Rosenberger in this district and circuit that he is a member of the Life Science Church and that his participation in this church is conducted in a manner to avoid payment of federal income tax. *See eg. United States v. First Nat. Bank through O'Hara,* 727 F.2d 762 (8th Cir.1984). The judicial officers issuing both warrants are federal judicial officers of this district. This Court will not hold the IRS to the hypertechnical requirement of supporting a statement which concerns a fact already of record in this district.

Special Agent Woodard stated that he has conducted investigations of tax protesters since 1973, and understands and recognizes the devices and techniques utilized in

---

8. Whether the search was properly limited in scope to the items described in the warrant is an issue developed later in this Order.

9. For the full terms behind these abreviations refer to pages 1346, and 1347.

concealing income. (Woodard Affidavit, pp. 1–3). Special Agent Woodard also sets forth communications with several confidential informants, all of whom had financial dealings with the respondent and who observed how he conducts his financial affairs. (Woodard Affidavit, pp. 5–8). It is true that the statement in the affidavit that Mr. Rosenberger is a self-proclaimed member of the Posse Comitatus is unsupported. (Woodard Affidavit, p. 3) However, even though there are unsupported statements in the affidavit that does not make the whole affidavit worthless. Applying the "totality of circumstances" test of *Illinois v. Gates, supra,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2340–41, the affidavit is sufficient, even with the unsupported statements excised, to provide probable cause for a search for violations of the internal revenue laws.

*Overbroad and Particularity*

The respondent next contends that the warrant authorizes the seizure of essentially all the personal property and business records of the Rosenbergers from January 1, 1978 to present and that the search warrant was overbroad and lacking in particularity. It is true that the search as executed was overbroad and that certain First Amendment material was seized that was not particularized in the description. At the hearing the Government conceded that some items seized should be returned, and in fact has already returned an estimated 37% of the material seized.[10]

The items seized to show "intent" to violate tax laws include files on such things as homemade weapons, and the Life Science Church, but the bulk of this category is tax protest literature such as files on Posse Comitatus, old issues of the newspapers "Your Heritage News", the "Justice Times" and the "Justice Journal", plus other miscellaneous literature on the Sixteenth Amendment, common law liens, the N.C. B.A., law course material on how to sue public officials and other books, pamphlets, tax protest tapes, bumper stickers, legal research files and additional documents too numerous to mention.

As mentioned, the Government contends that all the literature seized was seized to show intent. Agent Woodard contends he had authority to seize these items under the warrant's provision for the seizure of "other items". (Tr. p. 42). The Court finds that the material seized to show intent was by and large First Amendment material.[11] In *Zurcher v. Stanford Daily,* 436 U.S. 547, 564, 98 S.Ct. 1970, 1980, 56 L.Ed.2d 525 (1978) the Supreme Court stated,

> Where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude'.

*Id.*

> [T]he constitutional requirement that warrants must particularly describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books, and the basis for their seizure is the ideas which they contain. *See Marcus v. Search Warrant,* [Of Property At 104 East Tenth St., Kansas City, Mo.] 367 U.S. 717 [81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961)]; *A Quantity of Books v. Kansas,* 378 U.S. 205 [84 S.Ct. 1723, 12 L.Ed.2d 809 (1964)].

*Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965).

In this instance, the search as executed was overbroad. This Court sees no material distinction between the First Amendment material seized here to show "intent", and the First Amendment material in *Stanford* seized for the "ideas" they contain.[12]

---

10. An example of items that were returned include patient files, cassette tape recordings containing health and nutrition information, a cookbook and much more.

11. A few items were seized that allegedly show intent but were not First Amendment materials.

The Court will further address these in footnote 13.

12. The distinction between *Stanford* and the instant case is that in *Stanford* state law made membership in the Communist Party per se illegal and evidence of membership was seized.

Therefore, this Court concludes that the warrant must describe, with "scrupulous exactitude" the First Amendment material to be seized. The description "other items" even as limited in the warrant does not meet the descriptive test of "scrupulous exactitude". *United States v. Apker*, 705 F.2d 293, 301 (8th Cir.1983). There was no opportunity for Judge McManus and Magistrate Deck to consider whether first amendment material could be validly seized because the affidavit did not present facts in support of such a seizure. Further, they simply did not issue a warrant for the seizure of such items. Because the First Amendment material is not described in the warrant, it was not subject to seizure. The seizure was overbroad and the Government must return all First Amendment material.

█ The next issue to be resolved is whether the search was so overbroad that it converted the search into a general search proscribed by the Fourth Amendment requiring that *all* fruits of the search be returned. The seizure is found to be overbroad in two respects; first, as to the items seized the government earlier agreed to return; second, as to the First Amendment material and other material unrelated to a determination of taxable income that the Court is ordering returned in this Order. As to the remainder of the items seized the Court finds that they do go to tax violations. The Court holds that the search was not an impermissible general search and those items seized that are relevant to suspected income tax violations by Dr. Rosenberger and seized under the terms of the warrant can be retained by the Government.

█ Even where a search warrant meets both probable cause and particularity requirements, the search itself must be conducted in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant. *United States*

*v. Heldt*, 668 F.2d 1238, 1256 (D.C.Cir. 1981). A good faith attempt to stay within boundaries of an inherently broad search warrant will support a finding that the search, taken as a whole, was reasonable, even though a majority of documents seized might turn out not to qualify for inclusion on more leisurely reflection. *Id.* at 1269. A flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search requiring the return of all evidence seized. *Marvin v. United States*, 732 F.2d 669, 674 (8th Cir.1984). The fact that a warrant is found to be defective as to one category of items seized does not make the search impermissibly general. The offending items can be severed and the remainder of the warrant upheld as valid. *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir.1984). "Generally, the exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well." *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir.1982).

There is no evidence to show the officers acted in bad faith in conducting the search. Considerable material was taken, but considerable material was left behind. (Tr. p. 68, 77–78). The clear inference is that the officers attempted to be selective in carrying out the search, and limit it to its purposes. They had conversations with Dr. Rosenberger about materials that could rightfully be taken. (Tr. p. 69–70). Some of the material was left on his insistence, while other material was taken over his objection. *Id.* The logistics of the operation made it impossible to sort all the material on site. The Court finds there was no flagrant disregard for the limitations of the search warrant. *Marvin, supra*, 732 F.2d at 674–75. The holding of the Court in *Tamura* is persuasive and this Court applies it here:

---

Membership in a tax protest organization, however, is not per se illegal. The distinction between *Stanford* and this case only bolsters respondent's position that the "intent" material here was (a) legitimate First Amendment material (b) not as directly related to proof of a violation of tax laws, and (c) therefore the description of this material was required to be stated with "scrupulous exactitude".

Under the circumstances of the present case, where the Government's wholesale seizures were motivated by considerations of practicality rather than by a desire to engage in indiscriminate "fishing", we cannot say, although we find it a close case, that the officers so abused the warrant's authority that the otherwise valid warrant was transformed into a general one, thereby requiring all fruits to be suppressed. *Tamura, supra,* 694 F.2d at 597.

The Court will order the return of the First Amendment material.[13] This material includes all books (excluding books of account), pamphlets, newspapers, magazines, legal research files, any lawsuit files, tapes, and similar material where the basis for their seizure is the ideas which they contain, all as contemplated by *Stanford v. Texas,* 379 U.S. at 485, 85 S.Ct. at 511. (*See* p. 1349 of this Order). If the Government is not sure that all such books should be returned, said "questionable" books will be promptly shown to the Court for a final decision.

**II. The Second Warrant**

■ The respondent contends that the Government made an illegal entry into the rental unit and therefore any basis for probable cause gained while in the rental unit was tainted and that everything seized from the rental unit must be returned. The Government agents made two security sweeps of the rental unit and the Court finds that the facts justified each entry. The initial entry into the rental unit was made when the agents first arrived in the attached chiropractic office as an appropriate security measure. The second security sweep was made after the officers heard thumping noises from the attached rental unit.

In each instance the officers were justified in making the security sweeps to insure their safety. The officers had a justi-

fied fear for their safety in that members of some tax protest groups, including Posse Comitatus, have used deadly force in resistance to law enforcement officers. *See United States v. Faul,* 748 F.2d 1204 (8th Cir.1984). While the affidavit has no supporting statements for the assertion it makes that Dr. Rosenberger is a member of Posse Comitatus, the officers suspected that he was such a member. When the officers arrived in the chiropractic office, no one was present during business hours. The security sweeps were justified to insure the officers' safety, hence it was a reasonable search. *United States v. Jones,* 635 F.2d 1357, 1360 (8th Cir.1980). Once appropriately inside the rental unit on the second sweep, the officers noticed financial records there in plain view. The officers immediately sought and obtained the second warrant from Magistrate Deck. The Court treats the search under the second warrant the same as the first in all other respects and orders the return of any First Amendment material seized in those premises. (*See* p. 1351 of this Order).

**III. Rulings on Related Cases Distinguished**

The Court has been provided the rulings on the motions for return of seized property in the related Denver Colorado case, and the Portland, Oregon case. *United States v. National Currency Exchange,* No. 85-476M (D.Oregon, June 3, 1985); *Voss v. Bergsgaard,* 774 F.2d 402 (10th Cir.1985)

In Oregon, the district court ruled that the seizure of all items was proper based on the so called good faith exception to the warrant requirement. (Tr. p. 19–20); *See United States v. Leon, supra,* 104 S.Ct. at 3420; *Massachusetts v. Sheppard, supra,* 104 S.Ct. at 3428–29. In Colorado, the Tenth Circuit Court of Appeals affirmed the district court's ruling that the Colorado search constituted an unreasonable general search proscribed by the Fourth Amendment because of the failure to describe

**13.** The Government also seized some photocopies of currency and related material. These items were seized as contraband because it is illegal to possess photocopies of currency. The government will not be required to return this

material. This seizure was reasonable as the seizure of items in plain view. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

with particularity the items to be seized. Both of these cases while related are distinguishable from the instant case.

This case is distinguishable from the Oregon case in that in Oregon the principle basis for the search was suspected violations of the currency transactions reporting requirements of 31 U.S.C. Section 5313. In the instant case, the principle suspected violations are tax code violations. In addition the warrant here does mention suspected violations of 31 U.S.C. Section 5313. Because all material not ordered returned in the instant case is related to the tax investigation of Dr. Rosenberger, the Court finds it unnecessary to reach the issues related to the suspected violation of the currency transactions reporting requirements. The fact that the Government relies principally on suspected tax violations here, rather than currency transactions violations, as in Oregon, makes the Government's case here stronger than the Oregon case.

In Colorado, the Tenth Circuit found that "The bulk of the warrant was not restricted to evidence relating to tax fraud...." and that a seizure of "all business records" of the N.C.B.A. was unreasonable. *Voss, supra,* 774 F.2d at 404–05. The search here was primarily related to tax violations, and Agent Woodard testified at the hearing that he had intended to seek a warrant in connection with his criminal investigation of Rosenberger for tax violations independent of the coordinated search effort. In fact, he only learned of the coordinated effort three days before the search warrant was executed. (Tr. p. 54–56). Based on the affidavit, the description in the warrant, and the testimony at the hearing, clearly the focus here was on tax materials and the records concerning the N.C.B.A.

and other mentioned organizations were linked to the tax investigation. There is a conflict of authority between the Eight Circuit and Tenth Circuit concerning whether initially *all* business records may be seized. Unlike the rule of the Tenth Circuit set forth in *Voss,* the Eighth Circuit has recognized that in some circumstances all business records of an enterprise may be seized. *Marvin, supra,* 732 F.2d at 674, *citing, United States v. Brien,* 617 F.2d 299, 309 (1st Cir.1980) *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). *Marvin* held that items seized outside the scope of the warrant may be ordered returned later without invalidating the entire search.[14]

The crime which Dr. Rosenberger is suspected of committing here is a violation of tax laws. As such, the Government will be permitted to retain only those documents described in the warrant related to the tax violations of Dr. Rosenberger cited in the Woodard Affidavit. Thus, in addition to the First Amendment material, this Court will order the Service to return all documents referring to the N.C.B.A., N.C.E., M.S.E. and/or HARDWAY COMPANY which do not evidence cash transactions with Dr. Rosenberger or the Life Science Church of Morningside and do not assist in making a determination of taxable income. The IRS is directed to return any other documents unrelated to a determination of taxable income. It is my opinion this is consistent with the approach in *Marvin* and *Brien.*

This Court's opinion is that this is an appealable Order because this case meets the two criteria set forth in *In re Grand Jury Proceedings, supra,* 716 F.2d at 496 in that petitioner is (1) not under indictment

---

14. The majority in *Voss* stated that "to the extent that the above cases [including *Brien*] can be read as allowing the seizure of all of an organization's records when there is probable cause to believe the organization is pervasively criminal, whether or not those records are relevant to an alleged crime, we decline to follow them." *Voss, supra* 774 F.2d at 406. Judge Logan concurred in the *Voss* result but disagreed with the majority's disapproval of *Brien.* Judge Logan stated, "The Fourth Amendment's particularity requirement must be applied with a 'practical margin of flexibility.' The description of the property to be seized need be only as specific as the circumstances and nature of the activity under investigation permit." *Voss, supra,* 774 F.2d at 406. (Citations omitted). This Court believes the Eighth Circuit will continue to follow the approach followed in *Brien.*

and, (2) the primary purpose of his motion is the return of seized records. The Court considers this Order to be a final decision under 28 U.S.C. Section 1291 from which appeal can be taken. *Voss, supra,* at 404.

Accordingly,

IT IS THEREFORE ORDERED that the Motion to Suppress Evidence and for Return of Seized Property is sustained in part, and denied in part. The Government must return the following material:

1) All First Amendment material, where the basis for their seizure is the ideas they contain, including all books (excluding books of account), pamphlets, newspapers, magazines, legal research files, any lawsuit files, tapes, and similar material.

2) All documents referring to the N.C. B.A., N.C.E., M.S.E. and/or Hardway Co. which do not evidence cash transactions with Gary Rosenberger or the Life Science Church of Morningside and do not assist in making a determination of taxable income. All other documents seized which are unrelated to a determination of taxable income. Excepted from this Order to return seized property is the contraband referred to in footnote 13.

IT IS FURTHER ORDERED that all documents not included in the above two numbered paragraphs were properly seized and the Motion to Return any document related to taxable income is denied.

IT IS FURTHER ORDERED that the property be returned within fifteen (15) days of the filing date of this Order.

IT IS FURTHER ORDERED that the Motion to Proceed In Forma Pauperis is denied without prejudice to its being reurged at a later time.