**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**DALLACE SEIULI, Defendant**

High Court of American Samoa
Trial Division

CR No. 7-95

September 28, 1995

Before RICHMOND Associate Justice, AFUOLA, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Frederick J. O'Brien, Assistant Attorney General
 For Defendant, Reginald E. Gates, Public Defender

Order Partially Granting Motion to Suppress:

This order concerns the admissibility of evidence gathered after police officers seized the single item specifically described in a search warrant.

## FACTS

On December 7, 1994, at about 8:45 a.m., officers of the Department of Public Safety of plaintiff American Samoa Government ("ASG") arrived at the house where defendant Dallace Seiuli ("Seiuli") was residing to execute one or more of three search warrants issued for the search of Seiuli's residence, automobile, and person for a hand machine gun.

Commencing these searches, two police officers covered the rear door of the house, while two other officers, one knocking, were at the front door. Seiuli, who was then the only occupant of the house, appeared at the rear door. When informed of the search warrants, he offered no resistance to the officers' entry into the house. One officer explained to Seiuli that they were searching for a hand machine gun and asked Seiuli to lead them to this weapon. Seiuli showed the officers this weapon loaded with a magazine on a chair in Seiuli's bedroom. The officers seized the weapon and arrested Seiuli. One officer then opened the front door to admit the officers there and then returned to the bedroom.

27

Since the windows were covered and the room was dark, and the police officers wanted to video-tape the proceedings, the officers in the bedroom first sought to turn on the lights, but Seiuli advised them that the lights were not working. One officer then uncovered the windows. Another officer informed Seiuli that the officers would continue their search, attempting to find "bullets" for the hand machine gun. Several bullets for the hand machine gun were located. The officers also found a small bowl containing pieces of drinking straws and residue of methamphetamine powder, an illegal narcotic, underneath Seiuli's bed about six inches from the edge. On bookshelves, they discovered numerous plastic bags containing methamphetamine powder and two plastic bags in a black pouch, one containing methamphetamine powder and the other marijuana. A sawed-off shotgun was spotted on a shelf by the doorway of the bedroom. In addition to Seiuli's bedroom, the police officers later searched the living room and another bedroom within the residence. They seized a 12-gauge shotgun from the closet in the second bedroom, based on information given by Seiuli as to its existence and location.

Seiuli moved for suppression of the evidence based on the fact that the officers exceeded the limitations of the warrant to search the house. On September 21, 1995, this motion came regularly for hearing, with Seiuli and counsel for both parties present.

## DISCUSSION

The constitutional provision governing searches and seizures in American Samoa reads as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. Evidence obtained in violation of this section shall not be admitted in any court.

REV. CONST. OF AM. SAMOA, art. I, § 5.[1] The general rule governing the execution of search warrants is that only items named in the warrant may

---

[1] Because this language mirrors the language of the federal Constitution (adding a sentence constitutionalizing the exclusionary rule), federal and state cases are persuasive, but not binding authority in American Samoa.

28

be seized. *Stanford v. Texas*, 379 U.S. 476 (1965). ASG asserts the plain view doctrine and search incident to arrest exception as justification for the admission of the evidence not named in the warrant.

### 1. The Plain View Doctrine

■ The plain view doctrine is a recognized exception to the requirement of a search warrant in American Samoa, and permits a warrantless seizure of private property when three conditions are satisfied: (1) the police officer's presence in the area is lawful; (2) the discovery of the evidence is inadvertent; and (3) the incriminating nature of the evidence is immediately apparent. *American Samoa Gov'nt v. Loia*, 16 A.S.R.2d 1, 3 (Trial Div, 1990).

The initial police intrusion into the residence was clearly lawful. The police officers had a warrant to search the house for the hand machine gun. It is less clear, however, whether their continuing presence was justified when they searched Seiuli's bedroom for bullets after the seizure of the weapon identified in the warrant and Seiuli's arrest.

Upon similar facts, the Supreme Court of Georgia found that, "The discovery of the marijuana in a sugar bowl [during execution of a warrant for a pistol] did not result from a search beyond the scope of the warrant, as the officer explained he was searching for bullets." *Gaylor v. State*, 279 S.E.2d 207, 209 (Ga. 1981). Under the *Gaylor* facts, the police officer was searching for bullets in order to justify his intrusion into a sugar bowl too small to contain the pistol. During a search where the relevant weapon has not yet been (and might never be) located, ammunition might provide a valuable evidentiary nexus with the weapon.

■ The present sequence of events is reversed. The police officers continued to search for "bullets" after the weapon named in the warrant had been located. The Delaware Supreme Court has stated that, "Obviously, the officers would not be justified in seizing objects not listed in the warrant if they came into the 'plain view' of the officer only after he opened an interior door, drawer or closet and after all items listed in the warrant had already been seized." *State v. Phillips*, 366 A.2d 1203, 1208 (Del. 1976).

In the present case, the police officers seized the only item listed in the warrant. Then, after arresting Seiuli and opening the front door, they

*See American Samoa Government v. Loia*, 16 A.S.R. 2d 1, 3 n.1 (Trial Div. 1990).

29

illuminated[2] and conducted a general search of the bedroom, invasively overturning a mattress and looking under the bed and inside drawers. During the course of this deliberate rummaging, the officers found bullets, the small bowl containing methamphetamine residue, the sawed-off shotgun, the plastic bags containing methamphetamine powder and marijuana, and later the 12-gauge shotgun.

In light of these facts, we cannot characterize either the police officers' continued presence in Seiuli's room as lawful, or their discovery of materials not listed and described in the search warrant as inadvertent. Even if some of the discovered items were ultimately found in plain view, the officers' active search, continuing after the seizure of the item described in the warrant, rendered their presence in Seiuli's bedroom unlawful and their discovery deliberate.

Any other conclusion would require us to find that the officers held implied authority under the warrant to remain on the premises indefinitely, searching for bullets (or some other elusive, undiscovered item related to using a gun) after the gun named in the warrant had been seized. A warrant to search for a particular gun cannot imply the general authority to search for related items such as ammunition without creating expansive police discretion, and effectively transforming the particularized warrant into an impermissible general warrant.

## 2. The Search Incident to Arrest Exception

█ A warrantless search incident to valid arrest may include: (1) the person of the arrestee; and (2) the area within the arrestee's immediate control. *United States v. Robinson*, 414 U.S. 218, 227 (1973). The area within an arrestee's immediate control is the area where the arrested person might reach for either a weapon or evidentiary items. *Chimel v. California*, 395 U.S. 752, 755-68 (1969). The authority to conduct a search incident to arrest, however, does not depend on whether there is any indication that the arrestee possesses weapons or evidence.

---

[2] We concede that the artificial illumination of a darkened area, by itself, does not constitute a search. *American Samoa Gov't v. Loia*, 16 A.S.R. 2d 1, 3 (Trial Div. 1990). The foregoing case, however, refers to the use of a flashlight to view the interior of a vehicle through its windows while parked in a public place. The *Loia* court argued that the public nature of the parking area negates any legitimate expectation of privacy in space visible through the windshield. In the present case, however, the police officers were within private space by virtue of a search warrant, and had already seized every item named in the warrant before they illuminated the area and began their search for "bullets."

*Michigan v. DeFillipo*, 443 U.S. 31, 35 (1979); *United States v. Robinson*, 414 U.S. at 235. In addition to a comprehensive search of a defendant and the area within his immediate control, officers are authorized, upon reasonable suspicion, to make a "quick and limited" search or "protective sweep" of areas where a potential assailant may be hiding. *Maryland v. Buie*, 494 U.S. 325, 327, 333-335 (1990).

In the present case, the police officers' search of Seiuli's bedroom, subsequent to the arrest, clearly proceeded beyond the area within Seiuli's immediate control, and was much more detailed than the "protective sweep" envisioned in *Buie*. During the course of this invasive and detailed search, after Seiuli's arrest, the officers found bullets, drugs and drug paraphernalia, and the sawed-off shotgun in Seiuli's bedroom, and the 12-gauge shotgun in another bedroom.

ASG appealed to our "common sense," asking us to consider that the officer in charge of the search, who has been trained and has 10 years' experience in the conduct of narcotic investigations, knows the persons in this community who are involved in narcotic traffic and use, and that it is common for an officer to obtain a warrant for something for which he can show probable cause, as a pretext to enter a home and search for something else. In other words, ASG would have us condone the use of a particularized warrant as a pretext to conduct a pervasive general search for whatever incriminating evidence might be on the premises, even after items named in the warrant are found.

We realize that police officers in the narcotic arena know their suspects and tend to feel that due process requirements to obtain a proper search warrant are unnecessary and tedious. These requirements are admittedly cumbersome, and to a large extent only serve the purpose of preventing unfettered police discretion, the eventual imposition of a police state, and punishment without the benefit of judicial review. These reasons are quite sufficient to impose limitations on searches and seizures.

### 3. The Search Beyond Seiuli's Bedroom

 Once the persons or things named in the warrant are found, the owner or occupant of a house has a legitimate expectation of privacy in areas of the house which have not been searched, and the warrant itself will no longer support police entry into previously unentered rooms. *Maryland v. Buie*, 494 U.S. at 333 (1990). The police officers may, however, upon reasonable suspicion, conduct a "protective sweep" of areas from which an endangering attack may be launched, even if this means entering unentered rooms. *Id.*, at 333-35. When a house is known to be a dangerous place, the potential for danger justifies a "cursory"

31

search of the house and nearby vicinity for additional persons or weapons. *Simms v. Reiner*, 419 F. Supp. 468, 473 (N.D. Ill. 1976).

The police officers went to the house with a search warrant to recover a hand machine gun, and Seiuli was reputed to be involved with drugs. At that point, the officers had reason to be concerned about potential assailants in the house. We actually have only a few details regarding the search of the living room and second bedroom. However, we know that the 12-gauge shotgun was found in the course of searching the second bedroom, where Seiuli had told the officers it was located. This seizure took place about 10 minutes after the officers first entered the house. By that time, the officers were probably aware that Seiuli was the lone occupant of the house. The most reasonable inference from the evidence is that the officers knew that they were not confronted with any serious danger when they searched the other two rooms and recovered the 12-gauge shotgun. They were not then engaged in a protective sweep of the house for their security and did not attempt to testify that they were so engaged. Thus, under the circumstances, the seizure of the 12-gauge shotgun was also part of the unduly invasive search beyond the scope of the search warrant.

## REMEDIES

■ A search undertaken pursuant to a warrant must be directed in "good faith toward the objects specified in the warrant." *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978). If the warrant has been allowed to become an object for a "general search" and "it is not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant," all seized evidence must be suppressed. *Id.*

■ Generally, however, "the exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well." *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982); *Marvin v. United States*, 732 F.2d 669, 674 (8th Cir. 1984). The threshold question for suppressing all evidence obtained in a search is whether or not the behavior of the officers is so unconscionable as to rise to the level of a due process violation. *United States v. Tamura*, 694 F.2d at 597. Due process is violated only where there is "flagrant disregard for the limitations of the search warrant," transforming the particularized warrant into a general search. *Marvin v. United States*, 732 F.2d at 674-75; *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir. 1982); *see also U.S. v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988).

Although the police officers exhibited a cavalier attitude regarding the warrant's limitations on this occasion, we do not find that the search was undertaken in bad faith. Without prior judicial precedent for guidance in this jurisdiction, we can understand the officers' logic and motives when they suspect larger narcotics game but only have probable cause for a weapon to support a search warrant. Furthermore, we can also readily identify the things which would have been discovered had the search been kept within the warrant's limitations. We find no reason, therefore, to suppress all of the evidence in this case. However, we also alert ASG's Attorney General and Commissioner of Public Safety that with this case as precedent, we are likely to find bad faith if police officers ignore the parameters of search warrants in the future.

### ORDER

1. We suppress the loose bullets, drugs and drug paraphernalia, sawed-off shotgun, and 12-gauge shotgun which were found and seized in violation of the limitations of the search warrant.

2. We do not suppress the loaded hand machine gun which was described in the warrant.

3. The suppressed items of evidence are contraband. Pursuant to A.S.C.A. § 46.4234, the weapons and ammunition are confiscated. Pursuant to A.S.C.A. § 13.1033, the drugs and drug paraphernalia are confiscated. The Commissioner of Public Safety shall retain custody of these items, subject to the court's ultimate disposal orders.

It is so ordered.