650 F.Supp. 159 (1987)
In re the Matter of the Emergency Petition to Quash Grand Jury Subpoena Duces Tecum Served Upon Les ROBERTS of Roberts and Roberts Brokerage by the National Commodity and Barter Association, and its Service Wing, National Commodity Exchange, William Bicket and Carolyn Bicket.
Grand Jury No. 86-1.
United States District Court, N.D. Georgia, Atlanta Division.
January 6, 1987.
*160 William Cohan, Carl Stahl, Cohan & Stahl, Denver, Colo., for petitioners.
James Fagan, Asst. U.S. Atty., Atlanta, Ga., for government.

ORDER
ORINDA D. EVANS, District Judge.
This case is before the court on motion of Petitioners National Commodity and Barter *161 Association,[1] William Bicket and Carolyn Bicket to quash a grand jury subpoena issued to Roberts and Roberts Brokerage. An evidentiary hearing was held on October 29, 1986 and both Petitioners and the Government have filed supplemental evidentiary materials with the court since the hearing.
The National Commodity and Barter Association ("NCBA") is an association headquartered in Denver, Colorado. The NCBA provides financial services and educational materials to its members. The educational materials advocate abolition of the Internal Revenue Service, return to the gold standard, home education of children, and other goals. Common themes are that the government unduly encroaches on individual liberties and that the United States' banking system is dangerously unstable. The financial services include what are essentially banking services and also a purchasing service for the purchase of precious metals. According to NCBA's literature, it offers a group insurance plan which will pay legal expenses for an IRS audit or criminal tax prosecution plus a monthly stipend while a member is in prison.
The literature stresses that the banking and purchasing services offer privacy in one's financial affairs which is not available through typical financial institutions. NCBA's record keeping system handles members' deposits and withdrawals through a number coded system only; NCBA stresses that within a short time after the deposit/withdrawal is made, any records containing the member's name are destroyed so that no "paper trail" will be left. Petitioners' Exhibit No. 2. According to the literature, this special privacy is available because NCBA is entitled to First Amendment protection from government intrusion. NCBA charges a percentage of each transaction as a fee for its services.
The circumstances leading up to the instant motion are as follows. For some period of time Petitioner William Bicket has served as NCBA's north Atlanta representative. Carolyn Bicket is his wife. Mr. Bicket operates "Club 110," which is simply a name designated by NCBA for the activities of its representatives. As NCBA's local representative, Mr. Bicket is responsible for seeking new members, advocating the organization's viewpoint on constitutional/legal issues, and acting as members' contact point for NCBA's financial services. He works out of his home. For a period of time, Mr. Bicket received checks from members which were to be deposited with NCBA to the member's account. These would be checks made payable by third parties either to the member (and endorsed by the member) or to "NCE."[2] Mr. Bicket would collect these checks, together with forms in the nature of deposit slips or disbursement authorizations, and forward them to NCBA. Also, Mr. Bicket would forward instructions from members directing NCBA to purchase precious metals on their behalf.
In the transactions directly involved herein, Mr. Bicket deviated from NCBA's format as described in its literature. He sent letters and/or checks bearing his clients' names and addresses to Roberts and Roberts Brokerage in Pensacola, Florida and instructed the firm to ship gold or silver directly to members. Accordingly, Roberts and Roberts Brokerage is in the possession of records which identify Mr. Bicket's clients.
The grand jury is now investigating NCBA's and Mr. Bicket's activities to ascertain whether criminal tax violations, including conspiracy to violate the tax laws, exists. The grand jury has issued a subpoena calling for Roberts and Roberts Brokerage to produce all records from January 1, 1983 through September 16, 1986 *162 "relative to William D. Bicket, Club 110, National Commodity and Barter Association (NCBA), National Commodity Exchange (NCE) (and various other named individuals.)" Roberts and Roberts Brokerage has not moved to quash the subpoena, but the Bickets and NCBA have.
Petitioners make two arguments. First, they contend that revealing the names of members who have purchased gold and silver through the auspices of NCBA will "chill" and thus violate members' constitutionally protected right of association. Second, they contend that the subpoena is the product of an unlawful search and seizure and thus violates Fourth Amendment rights. The government disputes both contentions.
While the court is persuaded that revealing NCBA members' names may diminish their desire to associate with the organization, this fact has no constitutional significance unless protected free speech interests are implicated. The First Amendment right of association is derivative of First Amendment free speech rights. NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 1170-71, 2 L.Ed.2d 1488 (1958).
There has been an insufficient showing that compliance with the subpoena will actually chill protected speech rights. NCBA sells financial products and services and therefore has a commercial as well as an advocacy-oriented purpose. Therefore, individual members' decisions to associate with NCBA may be based on a desire to avail themselves of the financial services, or to support NCBA's points of view on various issues, or both. The court cannot assume that individual members have chosen to associate with NCBA for a protected purpose, given that one of its purposes is commercial. Commercial speech does not enjoy First Amendment protection. Kleiner v. First National Bank of Atlanta, 751 F.2d 1193 (11th Cir.1985). Whether members may choose to disassociate with NCBA because the "private" banking arrangements become unavailable is of no constitutional import. Moreover, even as to those members who have chosen to associate because of a desire to support NCBA's political beliefs, revealing members' names would not necessarily diminish their willingness or ability to advocate NCBA's stated points of view.[3] While abolition of the IRS, return to the gold standard and home education of children are not goals which are widely suported within the United States, neither are they so unpopular that individuals would hesitate to advocate them for fear of public reprisal. In this respect, this case differs from cases such as NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Thus, the court finds and concludes that the potential impact on free speech rights is only speculative. In summary, Petitioners have failed to demonstrate that the danger of infringement of protected free speech rights which may flow from the return of the subpoena is real, rather than hypothetical.
In order to determine whether the subpoena at issue should be quashed, the court looks to see whether it violates the Fourth Amendment requirement of reasonableness. This requires consideration of whether the subpoena is reasonable in scope, and whether it describes with sufficient particularity the items to be produced. United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); F.R. Crim.P. 45(b). Where First Amendment interests are implicated, the court is required to apply Fourth Amendment reasonableness standards with "particular exactitude." Zurcher v. Stanford Daily News, 436 U.S. 547, 565, 98 S.Ct. 1970, 1981, 56 L.Ed.2d 525 (1978). Given the speculative nature of the First Amendment rights at *163 issue here, the court finds the subpoena in this case is amply reasonable. Roberts and Roberts Brokerage's records are related to an on-going, legitimate investigation. The subpoena asks for all of Roberts and Roberts Brokerage's records which pertain to gold and silver purchases made through NBCA and William Bicket. The subpoena describes with particularity the records sought, by category. Therefore, the subpoena does not violate Petitioners' First or Fourth Amendment rights based on considerations of overbreadth.
Petitioners have called the court's attention to two decisions of the United States Court of Appeals for the Tenth Circuit which involved activities of NCBA. In In Re Grand Jury Subpoena To First National Bank v. United States, 701 F.2d 115 (10th Cir.1983), the court reversed a district court order declining to quash a grand jury subpoena duces tecum served on the the First National Bank of Englewood, Colorado. First National was the bank with which NCBA did business. The grand jury sought all of NCBA's bank records. NCBA contended that the bank's compliance with the subpoena would chill members' First Amendment rights. The district court denied the motion to quash on grounds that petitioners lacked standing to assert the First Amendment rights of members. The Court of Appeals found that petitioners had standing, and reversed and remanded for an evidentiary hearing on the question whether enforcement of the subpoena would likely chill associational rights.
In Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985), the court found that a search warrant authorizing the seizure of "all books, records or documents" of NCBA was unreasonably broad where the only identifiable alleged criminal violation was conspiracy to violate the tax laws under 18 U.S.C. § 371. In so finding, the court noted that "the search at issue implicated free speech and associational rights." Id. at 405.
The court has carefully examined the two Tenth Circuit decisions, and finds that neither decision supports Petitioners' position herein. In First National, the court was merely remanding for a hearing based on a determination that there was standing. In Voss, the court was dealing with a search warrant which was much more intrusive in its scope and effect than the subpoena presently before the court. Finally, the court in this case necessarily must look to the evidence before it in making factual determinations.
Finally, the court rejects Petitioners' assertion that the subpoena should be quashed because it is fruit of a poisonous tree, i.e., a raid in Colorado in 1985 which was held unlawful. Even if the Government obtained the identity of Bicket through the "Colorado raid," there is ample evidence to show the information leading to the subpoena would have been obtained from independent sources. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); United States v. Brookins, 614 F.2d 1037, 1044 (5th Cir.1980).
Accordingly, Petitioners' motion to quash is DENIED.
NOTES
[1] Also named as a Petitioner is National Commodity Exchange. However, the motion identifies the National Commodity Exchange as a "wing" of Movant National Commodity and Barter Association, not a separate organization.
[2] NCBA's literature suggests that members have third parties make checks directly payable to "NCE" to further avoid the creation of a "paper trail."
[3] Members might hesitate to publicly advocate NCBA's implicit message that citizens should revolt against the tax system by failing to pay their taxes. However, since this constitutes advocating the commission of a crime, it is not entitled to First Amendment protection, Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), and any "chilling" of this speech is of no legal consequence.