FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

August 2, 2022

Christopher M. Wolpert
Clerk of Court

_____

DAVID WELLINGTON,

    Plaintiff - Appellant,

v.

FERNANDO DAZA; SPECIAL AGENT
HAND; SPECIAL AGENT MARSHALL;
UNKNOWN AGENT 1; UNKNOWN
AGENT 2; UNKNOWN AGENT 3;
UNKNOWN AGENT 4; UNKNOWN
AGENT 5,

    Defendants - Appellees.

No. 21-2052
(D.C. No. 1:17-CV-00732-JAP-LF)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **ROSSMAN**, Circuit Judges.
_____

David Wellington, proceeding pro se, appeals from the district court's grant of

summary judgment to the defendants in his civil-rights suit. Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

In 2017, the Internal Revenue Service (IRS) Criminal Investigation Unit was investigating whether Mr. Wellington violated 26 U.S.C. § 7201 (attempt to evade or defeat tax) and 18 U.S.C. § 371 (conspiracy to defraud the United States). The scheme under investigation involved a business that Mr. Wellington organized, National Business Services, LCC (NBS). The government suspected that NBS advised and aided clients in creating New Mexico limited liability companies (LLCs) so that the clients could conduct financial matters without paying taxes.

On March 10, 2017, Special Agent Fernando Daza applied for a warrant to search Mr. Wellington's home in Albuquerque, New Mexico, for evidence of violations of §§ 7201 and 371. After reviewing the application, Special Agent Daza's supporting affidavit, the warrant, and its attachments, a federal magistrate judge approved and signed the warrant.

On March 14, Special Agent Sean Marshall, Special Agent Gregory Hand, and other agents executed the warrant. One agent patted Mr. Wellington down. They told him that he could stay or go during the search. But they would not allow him to change clothes, and because he was dressed only in a t-shirt and pajama pants, he believed he had no choice but to stay. The agents seized numerous items from the house, including documents, publications, and electronic devices. Special Agent Daza filed a return and an inventory of items seized during the search.

Mr. Wellington filed suit under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the search of his

2

home and seizure of his property and his person violated his rights under the Fourth

and First Amendments.[1]  The district court granted summary judgment to the agents

---

[1] While this appeal was pending, the Supreme Court held a plaintiff had no *Bivens* remedy against a U.S. Border Patrol agent for excessive force in violation of the Fourth Amendment or retaliation in violation of the First Amendment. *See Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800, 1804 (2022).  We requested supplemental briefing from the parties regarding *Egbert*'s effect on this appeal, if any, as well as the effect of the parties' failure to raise in the district court the issue of whether a *Bivens* remedy exists in these circumstances.

The defendants assert that Mr. Wellington has no *Bivens* remedy for either the alleged Fourth Amendment or First Amendment violations.  Although they concede that they did not raise their arguments before the district court, they urge us to reach the issues as an alternative ground for affirmance.  Mr. Wellington argues that *Egbert* does not overrule *Bivens*, *see id.* at 1809 ("[T]o decide the case before us, we need not reconsider *Bivens* itself."), and that, like *Bivens*, this case involves search and seizure.  He further asserts that the defendants should not be able to question the existence of a *Bivens* cause of action for the first time on appeal.

At a minimum, *Egbert* casts grave doubt on any assumption that Mr. Wellington has a *Bivens* remedy for a First Amendment violation.  *See id.* at 1807 ("[W]e have never held that *Bivens* extends to First Amendment claims . . . . Now presented with the question whether to extend *Bivens* to this context, we hold that there is no *Bivens* action for First Amendment retaliation." (internal quotation marks omitted)).  And even though *Bivens* also involved search and seizure, *Egbert* may nevertheless affect Mr. Wellington's Fourth Amendment claims.  *See id.* at 1810 (Gorsuch, J., concurring in the judgment) ("I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself. . . .  If the costs and benefits do not justify a new *Bivens* action on facts so analogous to *Bivens* itself, it's hard to see how they ever could.  And if the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no.").

But *Egbert* does not break entirely new ground; the defendants could have relied on earlier Supreme Court decisions to argue that Mr. Wellington lacks a *Bivens* remedy.  *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("The first question to be discussed is whether petitioners can be sued for damages under *Bivens* and the ensuing cases in this Court defining the reach and the limits of that precedent.").  "Our adversarial system endows the parties with the opportunity—and duty—to craft their own legal theories for relief in the district court."  *Richison v. Ernest Grp., Inc.*,

on six out of seven claims based on qualified immunity.  Ultimately the parties stipulated to dismissing the remaining claim with prejudice, and Mr. Wellington now appeals from the grant of summary judgment on the six claims.[2]

## DISCUSSION

### I.      Legal Standards

#### A.      Pro Se Litigant

We liberally construe Mr. Wellington's pro se filings.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  But we do not act as his counsel, and he must "follow the same rules of procedure that govern other litigants."  *Id.* (internal quotation marks omitted).

---

634 F.3d 1123, 1130 (10th Cir. 2011).  Thus, we generally do not entertain new arguments on appeal (although we may be more lenient when the argument is in favor of affirming, rather than reversing).  *See id.*  In addition, the Supreme Court decided *Egbert* after the parties had fully briefed this appeal.  We are "reluctant to definitively opine on the merits [when] we are deprived of the benefit of vigorous adversarial testing of the issue, not to mention a reasoned district court decision on the subject."  *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013).  "Our reluctance is heightened [when the] argument involves a complicated and little-explored area of constitutional law."  *Id.*

"The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."  *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  We generally do not consider issues the parties failed to raise before the district court.  Further, we have before us only limited supplemental briefing addressing the issue, and we can affirm the judgment on grounds considered by the district court.  Therefore, as a matter of discretion, we decline to decide whether a *Bivens* cause of action exists in this case.

[2] Claim Three, which was dismissed upon stipulation, is not part of this appeal.

**B.    Summary Judgment**

Contrary to Mr. Wellington's assertion that the court decided "a qualified immunity dismissal motion," Aplt. Opening Br. at 12, the district court decided the issues on summary judgment, first in considering Mr. Wellington's motion for partial summary judgment and then in considering the defendants' motion for partial summary judgment. "We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1201 (10th Cir. 2007).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the evidence in the light most favorable to the nonmoving party[,] . . . [b]ut we need not make unreasonable inferences that are unsupported by the record." *Est. of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017) (internal quotation marks omitted).

Because the district court was deciding motions for summary judgment, Mr. Wellington could not simply rest on the allegations of his complaint. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness. On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it" in conducting a qualified-immunity analysis. (citation and internal quotation marks omitted)); *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009)

5

(in opposing summary judgment, "the nonmoving party[] may not rest on his pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof" (brackets and internal quotation marks omitted)).

### C.    Qualified Immunity

"[T]he Supreme Court has recognized that public officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). "And because it is the norm in private actions against public officials, officials enjoy a presumption of immunity when the defense of qualified immunity is raised." *Id.* (internal quotation marks omitted). Therefore, "[o]nce a defendant asserts qualified immunity, the burden shifts to the plaintiff to establish (1) a violation of a constitutional right (2) that was clearly established at the time of the violation." *Est. of Redd*, 848 F.3d at 906 (internal quotation marks omitted). "We may decide which of these two prongs to address first, and need not address both." *Id.*

## II.    Fourth Amendment Claims

Claims One, Two, Four, and Seven allege violations of Mr. Wellington's Fourth Amendment right against unreasonable searches and seizures.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

6

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Accordingly, for a warrant to be constitutional, it must satisfy three conditions:  it must (1) be issued by a "neutral [and] disinterested" magistrate; (2) be supported by probable cause; and (3) "particularly describe the things to be seized, as well as the place to be searched."  *Mink v. Knox*, 613 F.3d 995, 1003 (10th Cir. 2010) (internal quotation marks omitted).  "These requirements ensure that no intrusion in the way of search or seizure occurs without a careful prior determination of necessity, and preventing the specific evil of the general warrant abhorred by the colonists."  *Id.* (internal quotation marks omitted).  This case involves the third condition, the particularity requirement.

### A.    Claim One:  Search and Seizure of Property

Claim One alleged that the agents willfully conducted an unreasonable general search of Mr. Wellington's residence and unreasonably seized his property.  In seeking partial summary judgment, Mr. Wellington asserted that the warrant was facially invalid because it was so overbroad as to constitute a general warrant.  The district court upheld the validity of the warrant and denied Mr. Wellington's motion for partial summary judgment.  Later, in deciding the defendants' motion for partial summary judgment, the district court readopted its earlier ruling on the validity of the warrant.  It further held that, although it would have been clear to the agents that it would be unlawful to seize items that were not described in the warrant, Mr. Wellington had not presented any evidence of any such seizures.

7

### 1.    Validity of Warrant

The warrant allowed the agents to search for and seize "evidence, fruits and instrumentalities of crimes relating to violations of 26 U.S.C. §7201 (Attempt to Evade Taxes) and 18 U.S.C. § 371 (Conspiracy), for the time-period of January 1, 2005 through the present."  R. Vol. 1 at 175.  Among other items, it provided that such evidence would include "[b]ooks and records pertaining to National Business Services, New Mexico Limited Liability Companies (NM LLCs), Stacy Underwood, David Wellington, Jerry Shrock, Michelle Shrock or associated companies/parties."  *Id.*  And it allowed the seizure of "[t]ax defier paraphernalia to include books, instruction manuals, and how to pamphlets."  *Id.* at 176.  Mr. Wellington argues that the warrant was so overbroad in describing the items to be seized, both with regard to subject matter and the included persons and entities, that it constituted a prohibited general warrant.[3]

"The test applied to the description of the items to be seized is a practical one. A description is sufficiently particular when it enables the searcher to reasonably

---

[3] "There is a difference . . . between warrants which are 'general' and those which are 'overly broad.'"  *United States v. Cotto*, 995 F.3d 786, 798 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 820 (2022).  "General warrants are those that allow government officials to engage in exploratory rummaging in a person's belongings[,] . . . vest[ing] the executing officers with unbridled discretion," while "an overly broad warrant describes in both specific and inclusive general terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." *Id.* (internal quotation marks omitted).  Although Mr. Wellington complains that the warrant was overly broad, he disclaims any intent to challenge probable cause.  We therefore understand him to be arguing that the breadth of the warrant was so great that it effectively was a general warrant.

ascertain and identify the things authorized to be seized." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (internal quotation marks omitted). "Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* (internal quotation marks omitted). But *Leary* further recognized that "the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *Id.* (internal quotation marks omitted).[4]

Mr. Wellington argues that both §§ 7201 and 371 are so broad that referring to them was meaningless in terms of limiting the warrant. *See id.* at 602 ("An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant."); *see also Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (stating that § 371 is so broad that citing it "places no real limitation on the warrant"). It is true that these statutes reach quite far. But the criminal activity under investigation here was extensive. This court has upheld broad warrants where

---

[4] "[T]he particularity of an affidavit may cure an overbroad warrant" if two requirements are met: "first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference." *Leary*, 846 F.2d at 603 (internal quotation marks omitted). The warrant involved in this case did not incorporate Special Agent Daza's affidavit by reference, and therefore we do not consider that affidavit.

the underlying criminal conduct was extensive. *See United States v. Villanueva*, 821 F.3d 1226, 1238-39 (10th Cir. 2016); *United States v. Hargus*, 128 F.3d 1358, 1362-63 (10th Cir. 1997). Further, the warrant did not simply cite those statutes, but also had limiting features, including a list of the types of documents to be seized and a date restriction. *See Leary*, 846 F.2d at 601 n.15 (suggesting the court would uphold the warrant if it had limitations); *see also In re Search of Kitty's East*, 905 F.2d 1367, 1375 (10th Cir. 1990) (noting that the warrant included limitations).[5]

Mr. Wellington further complains about "the lack of limitation on *who* the warrant pertained to," particularly the reference to unspecified New Mexico LLCs and unspecified associated companies/parties. Aplt. Opening Br. at 16. But given the extensive conspiracy under investigation, which particularly included using NBS in advising clients to form New Mexico LLCs to avoid payment of taxes, and then aiding them in forming those LLCs, he has not established that the descriptions were not "as specific as the circumstances and the nature of the activity under investigation permit." *Leary*, 846 F.2d at 600 (internal quotation marks omitted).

---

[5] Mr. Wellington complains that the warrant dates back to 2005, further than the limitations periods for violations of §§ 7201 and 371. *Cf. Kitty's East*, 905 F.2d at 1375 (holding that date restriction in warrant was not overbroad where it covered periods within statute of limitations). The government argues that conduct back to 2005 is prosecutable as part of the conspiracy, and that, in any event, earlier events may be relevant to the proceedings, *see* Fed. R. Evid. 404(b)(2) (allowing introduction of other crimes, wrongs, or acts to prove matters such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). The government has the better part of this argument.

### 2. Execution of Warrant

Claim One alleged that the agents performed an unlawful "general search" and "seiz[ed] items regardless of whether they were listed in the warrant or not." R. Vol. 1 at 25. The district court held that, once the defendants asserted qualified immunity, Mr. Wellington was required to present evidence that the government seized items that were not listed in the warrant, and he failed to do so.

Mr. Wellington argues that the defendants did not sufficiently argue this issue and did not present any facts to support a conclusion that they acted constitutionally. He further asserts that in these circumstances, "the allegations in the Complaint would have to stand as presumed true." Aplt. Opening Br. at 29. "By refusing to consider the allegations in the Complaint, the district court used an incorrect legal analysis[.]" *Id.* at 30.

The district court did not err. The defendants asserted they were entitled to qualified immunity. Thus, to overcome summary judgment, Mr. Wellington was required to show a genuine issue of material fact as to whether the defendants acted unconstitutionally (i.e., they seized items not listed in the warrant). *See Bowling v. Rector*, 584 F.3d 956, 971 (10th Cir. 2009). He did not do so.

Mr. Wellington misunderstands the shifting burdens of proof applicable in qualified-immunity cases. As explained above, once a defendant invokes qualified immunity, it becomes the *plaintiff's burden* to establish that the defendant acted unconstitutionally and in violation of clearly established law. *See Est. of Redd*,

848 F.3d at 906.  The defendants were not required to show their actions were constitutional; rather, he was required to show that they were not.

Moreover, Mr. Wellington incorrectly asserts that the defendants offered no facts in support of their motion.  To the contrary, the defendants attached an inventory listing the items seized, which the court could compare against the search warrant.  But in any event, reversal would not be warranted even if the defendants had submitted no evidence.  There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  Thus, the defendants were not required to adduce evidence to support their motion; instead, to overcome summary judgment, Mr. Wellington was required to show the existence of evidence that the agents seized materials that were outside the scope of the warrant.

Finally, as also discussed above, we reject the notion that the district court applied the wrong legal standard by not crediting the allegations in the complaint. *See Behrens*, 516 U.S. at 309; *Travis*, 565 F.3d at 1258.

## B.     Claim Two:  Seizure of Electronics

Claim Two challenged the seizure of Mr. Wellington's computer and electronic equipment, and the copying of information therein, under the Fourth Amendment and Fed. R. Crim. P. 41.  It alleged that the defendants conducted a

general search and seizure of the electronics and that the information was copied in order to perform a later unrestricted search. The district court held that (1) the warrant was sufficiently particular even though it lacked specific search protocols for electronic data, and (2) Mr. Wellington's allegations of unconstitutional searches were speculative and unsupported. "It is Plaintiff who has the burden to show a clearly established constitutional violation, and Plaintiff has failed to present any evidence to show that Defendants searched for and obtained evidence not described in the warrant." R. Vol. 1 at 243.

Similar to his arguments about the execution of the search warrant, Mr. Wellington asserts that the defendants did not present any facts about the searches that were conducted and that the district court did not rely on the allegations in his complaint. Again, however, it was his burden to establish that the defendants acted unconstitutionally, not theirs to establish that they acted constitutionally, and he had to go beyond the pleadings to satisfy that burden.

Mr. Wellington further asserts that the issue was premature, noting that he had not been able to conduct discovery. But the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Fed. R. Civ. P. 56(d)(2) provides that the district court may "allow time to obtain affidavits or declarations or *to take discovery*" if a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." (emphasis added). This provision "does not operate automatically. Its

13

protections must be invoked and can be applied only if a party satisfies certain requirements." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). Moreover, the defendants moved to stay discovery pending a decision on their then-soon-to-be-filed motion for summary judgment based on qualified immunity. But Mr. Wellington did not file a response to the motion to stay, thus surrendering the opportunity to inform the district court of any reasons why he needed discovery. Given that Mr. Wellington did not invoke the Rule 56(d) procedure and did not respond to the motion to stay discovery, the district court did not err in granting summary judgment without allowing discovery. *See id.* at 783-84.

### C.    Claim Four:  Seizure of Mr. Wellington

The fourth claim alleges that the agents unconstitutionally detained Mr. Wellington while they conducted the search. The district court noted that the agents had told Mr. Wellington he was free to leave. Even assuming he was detained, however, it noted that officers have the authority to detain persons found on premises that are subject to a search warrant. *See Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Therefore, it held, Mr. Wellington failed to show the agents violated his constitutional rights.

Mr. Wellington points out that the agents would not allow him to change clothes, so that he could take advantage of the offer to allow him to leave. He therefore argues, "the real issue is whether or not it was unreasonable under the Fourth Amendment to create conditions that did not allow [him] to leave even though

14

he was not being detained." Aplt. Opening Br. at 32. This proposition, however, is indistinguishable from asserting that the agents unconstitutionally detained him.

As the district court held, the agents had the authority to detain Mr. Wellington during the search. *See Summers*, 452 U.S. at 705 ("[A] warrant to search a house for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (footnote omitted)); *Muehler*, 544 U.S. at 98 (holding that detention of occupant in handcuffs for length of search of residence was "plainly permissible" under *Summers*). Mr. Wellington argues that *Summers* is inapplicable because it referred to a search for "contraband," 452 U.S. at 705, which he states was not involved here. But although *Summers* declined to decide "whether the same result would be justified if the search warrant merely authorized a search for evidence," *id.* at 705 n.20, this court has extended *Summers* to warrants authorizing a search for evidence when the person seized is the subject of the investigation of criminal activity, *see United States v. Ritchie*, 35 F.3d 1477, 1483 (10th Cir. 1994).

In short, given that the agents could constitutionally have refused to let Mr. Wellington leave at all, they did not act unconstitutionally by declining his request to change clothes, even if that left him believing he had no choice but to stay. The district court appropriately applied qualified immunity to grant summary judgment to the agents on this claim.

15

### D. Claim Seven: Deprivation of Property

The seventh claim alleges that the agents failed to return seized items, resulting in a permanent deprivation of property. The district court dismissed this claim as moot because the government returned Mr. Wellington's property after he filed this lawsuit. Mr. Wellington's opening brief does not make any argument why Claim Seven is not moot. Accordingly, he has waived any challenge to the dismissal of Claim Seven. *See Schreiber v. Cuccinelli*, 981 F.3d 766, 778 (10th Cir. 2020) (recognizing that failure to make an argument in opening brief results in waiver), *cert. denied sub nom. Schreiber v. Renaud*, 142 S. Ct. 229 (2021).

## IV. First Amendment Claims

### A. Claim Five: Seizure of Publications

Claim Five alleges that the agents seized publications and literature "due solely to their content," in violation of Mr. Wellington's First Amendment rights. R. Vol. I at 27. The district court held that "the Warrant allowed agents to seize only books and printed material related to the crimes of tax evasion and related conspiracies. As instrumentalities of crime, such materials are not protected by the First Amendment." *Id.* at 245. It further noted that Mr. Wellington "presented no evidence that items seized at his residence lacked relationship to the crimes of tax evasion, attempted tax evasion, or conspiracy to commit tax evasion." *Id.*

The First Amendment does not bar the search for and seizure of materials that are evidence, fruits, and instrumentalities of crime. *See Heller v. New York*, 413 U.S. 483, 492 (1973) (recognizing that "seizing a single copy of a film" may serve "the

16

bona fide purpose of preserving it as evidence in a criminal proceeding"). And although the Supreme Court has held that the particularity requirement "is to be accorded the most scrupulous exactitude" when it comes to search warrants authorizing the seizure of books, based on the ideas they contain, *Stanford v. Texas*, 379 U.S. 476, 485 (1965), the warrant here sufficiently circumscribed the materials to be seized.

Mr. Wellington challenges the provision allowing the seizure of "[t]ax defier paraphernalia," R. Vol. 1 at 176, asserting that "[t]he term is not defined in any law, but is plainly aimed at publications *on the basis of their content*. In fact, it is not just the content (any 'tax' whatsoever), but on the basis of a *specific view-point*: a 'defier'," Aplt. Opening Br. at 20. Although the term is not defined by statute, it is sufficiently particular to allow agents to identify the materials to be seized. And again, although the warrant describes materials in terms of their content, it is not directed at the content per se, but because the materials are evidence, fruits, or instrumentalities of violations of §§ 7201 and 371.

Mr. Wellington also argues that he has the right to a post-seizure hearing regarding materials protected by the First Amendment. The cases he cites, however, all arise from the arena of obscenity and restraint of distribution. He has not demonstrated the expansion of that caselaw to seizures, pursuant to a search warrant, of particular copies of books and other materials that may be evidence, fruits, or instrumentalities of other types of crimes. *See also Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989) (distinguishing seizure and retention of "a single

17

copy of a book or film . . . for evidentiary purposes based on a finding of probable cause" from taking the publication "out of circulation completely [without] a determination of obscenity after an adversary hearing").

### B.    Claim Six:  Evidence of Associations

Finally, the sixth claim alleges that the agents seized information about Mr. Wellington's associates and contacts in violation of his First Amendment right to privacy in association.  The district court held that the First Amendment does not protect against a search for items that tend to prove illegal conspiracy, and that Mr. Wellington had not presented any evidence that the agents seized information about his associates that was unrelated to attempted tax evasion and/or conspiracy.

"[The Supreme] Court has long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (internal quotation marks omitted).  Nevertheless, the First Amendment right of association does not necessarily shield a defendant's associations from becoming relevant to a criminal prosecution.  *See United States v. Abel*, 469 U.S. 45, 52-54 (1984) (allowing evidence that defendant and witness were members of a gang, where membership and gang's tenets of protecting each other were probative of witness's potential bias in favor of defendant); *see also Dawson v. Delaware*, 503 U.S. 159, 165 (1992) ("[T]he Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment."); *Voss*, 774 F.2d at 408 ("The

existence of First Amendment rights does not prevent a search when the items sought tend to prove conspirators' associations with each other or concrete legal violations." (Logan, J., concurring)).  Before this court, as before the district court, Mr. Wellington fails to identify any evidence that the agents seized information about his associates and contacts that was unrelated to attempted tax evasion or conspiracy. Instead, he points to the allegations in the complaint.  As stated above, however, he cannot rely simply on the pleadings in opposing summary judgment.  The district court appropriately granted summary judgment to the agents on Claim Six.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge